UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**DEBRA J. MADDESS**,

        Plaintiff,

v.

**MICHAEL J. ASTRUE**,
Commissioner of Social Security,

        Defendant.

Civil Case No. 3:11-CV-06177-KI

OPINION AND ORDER

    Kathryn Tassinari
    Mark A. Manning
    Harder, Wells, Baron & Manning, P.C.
    474 Willamette, Suite 200
    Eugene, Oregon  97401

        Attorneys for Plaintiff

    S. Amanda Marshall
    United States Attorney
    District of Oregon

Page 1 - OPINION AND ORDER

Adrian L. Brown
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon  97201-2902

David Morado
Regional Chief Counsel, Region X, Seattle
Henry Ernest Velte III
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
1301 Young Street, Suite A702
Dallas, Texas  75202-5433

       Attorneys for Defendant

KING, Judge:

Plaintiff Debra J. Maddess brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI").  I reverse the decision of the Commissioner and remand for further proceedings.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability.  42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act.  42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The evaluation is carried out by the Administrative Law Judge ("ALJ"). The claimant has the burden of proof on the first four steps. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520 and 416.920. First, the ALJ determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the ALJ proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the ALJ proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d),

Page 3 - OPINION AND ORDER

416.920(d).  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past.  If the claimant is able to perform work she performed in the past, the ALJ makes a finding of "not disabled" and disability benefits are denied.  20 C.F.R. §§ 404.1520(e), 416.920(e).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience.  The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities.  Parra, 481 F.3d at 746.  The claimant is entitled to disability benefits only if he is unable to perform other work.  20 C.F.R. §§ 404.1520(f), 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards.  Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005).  Substantial evidence is more than a "mere scintilla" of the evidence but less than a preponderance.  Id.  "[T]he commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision."  Batson v. Barnhart, 359 F.3d 1190, 1193 (9th Cir. 2004) (internal citations omitted).

## THE ALJ'S DECISION

In July 2010, ALJ Volz found that Maddess had severe impairments of degenerative disc disease, pancreatitis, bipolar disorder, post-traumatic stress disorder ("PTSD"), and fibromyalgia. The ALJ also found that these impairments, either singly or in combination, were not severe enough to meet or medically equal the requirements of any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1.

Maddess had previously submitted an application for disability, which ALJ Madden denied in June 2006 after finding that Maddess was not disabled. In the 2010 decision, ALJ Volz noted that under Chavez v. Bowen, 844 F.2d 691 (9th Cir. 1988), the 2006 decision provides a presumption that the claimant continues to not be disabled, even after the adjudicated period, unless the claimant can show a change in circumstances. ALJ Volz concluded that Maddess did not rebut the Chavez presumption and, consequently, ALJ Volz adopted the findings of ALJ Madden.

ALJ Volz found that Maddess had the residual functional capacity to perform the full range of light work with only occasional stooping but frequent other postural limitations. Based on the testimony of a vocational expert, the ALJ concluded on July 1, 2010 that Maddess could return to her past relevant work as a waitress, cook, or waitress manager and, thus, was not disabled under the Act.

///

///

Page 5 - OPINION AND ORDER

## FACTS

Maddess claims she became disabled on October 31, 2001[1] due to chronic back pain, pancreatitis, bipolar disorder, PTSD, degenerative disc disease, and fibromyalgia. She was 47 years old at the time of the ALJ's decision and has a high school education. Maddess has experience in the restaurant industry, working as a cook, waitress, and manager.

Maddess suffered from physical and mental abuse both as a child and in several adult relationships. She has a history of alcohol and drug abuse. Maddess has had at least fourteen hospitalizations for alcohol-related pancreatitis from September 2006 through January 2009. She reports being clean from drugs since March 2005 and sober since January 2009.

Maddess complains of pain in her lower and upper back, numbness in her left leg, and the inability to sit for more than 30 minutes or walk more than a block without pain. She characterizes her pain at a level of eight out of ten, with narcotic pain medication reducing the pain to six out of ten. Maddess complains of trouble paying attention, remembering things, and being around people, and getting flustered and angry. When she stopped drinking, Maddess's stomach pain ended but her mental condition did not improve.

Maddess lives in a trailer next to her parents' home. She moved back home in 2005, after her fiancé died of cancer. Once she returned home, Maddess relied on her mother to take care of everything for her. Her mother does the laundry and dishes, does all the cooking, takes Maddess shopping once a month and does the rest of the shopping herself, and drives Maddess to appointments. Maddess had not socialized for the last few years before the hearing and claims to

---

[1] At the hearing, the ALJ granted Maddess's attorney's motion to amend her disability onset date to June 27, 2006, one day after the 2006 decision finding her not disabled.

live like a hermit in her trailer, sleeping and watching television.

## DISCUSSION

I.   Application of Chavez v. Bowen

ALJ Volz applied Chavez and adopted the findings ALJ Madden made in the 2006 decision.

Res judicata principles apply to administrative decisions, including Social Security opinions, but the doctrine is applied less rigidly than in judicial proceedings. Chavez, 844 F.2d at 693. Under Chavez, a claimant "must prove changed circumstances indicating a greater disability" to "overcome the presumption of continuing nondisability arising from the first administrative law judge's findings of nondisability." Id. The presumption does not apply "where the claimant raises a new issue, such as the existence of an impairment not considered in the previous application." Vasquez v. Astrue, 572 F.3d 586, 597 (9th Cir. 2009) (internal quotation omitted). Moreover, if a claimant was not represented in the original claim, "the rigid application of res judicata would be undesirable." Gregory v. Bowen, 844 F.2d 664, 666 (9th Cir. 1988).

ALJ Volz stated:

> After review of the medical evidence and testimony of the claimant as well as consideration of the Chavez ruling, I find that the claimant's age, education, and work history have not changed. In addition, I find that the medical examination and laboratory findings do not show new and material evidence that would support a different finding than the previous Administrative Law Judge's residual functional capacity for light work with environmental and vocational non-exertional limitations, medical findings, lack of credibility and denial. While the record demonstrates that the claimant has since stopped ETOH abuse and that her gastric condition has resolved, these findings are insufficient to rebut the presumption of continuing non-disability. Moreover, the subsequent medical history provided is primarily from counselors and occasional nurse practitioners

>   which are not acceptable medical sources in accordance with (SSR 06-3p).
>   Accordingly, the findings of the previous Administrative Law Judge are hereby
>   adopted.

Tr. 17.

The administrative record does not contain the documents from Maddess's first application but the 2006 decision sets forth much of the information.  In 2006, ALJ Madden found that Maddess had severe impairments of a depressive disorder, a personality disorder not otherwise specified, a polysubstance abuse disorder self-reportedly in remission, and episodic gastritis/pancreatitis.  ALJ Madden also noted that Maddess alleged the inability to work because of bipolar disorder, PTSD, and degenerative disc disease and had reported suffering from fibromyalgia to a mental health provider.

In 2010, ALJ Volz found that Maddess had severe impairments of degenerative disc disease, pancreatitis, bipolar disorder, PTSD, and fibromyalgia.  Thus, Maddess has not raised a new impairment which ALJ Madden failed to consider and res judicata could be applicable.  I have several other concerns about the application of res judicata, however.

In 2006, ALJ Madden included several psychological limitations in Maddess's residual functional capacity:

>   As a result of psychological limitations, she is moderately limited in her ability to
>   maintain attention and concentration for extended periods.  She has moderate
>   limitations in her ability to interact appropriately with the general public.  Contact
>   with the public and coworkers is appropriate on an incidental basis, but not with
>   constant interactions.  She has moderate limitations in her ability to be aware of
>   and take appropriate precautions for normal hazards.  She is capable of
>   understanding and performing unrushed, routine tasks.

Tr. 62.

In his 2010 decision, ALJ Volz first stated he was applying Chavez and adopting the

findings of ALJ Maddess, without mentioning any exceptions. ALJ Volz then stated, "[T]he prior determination of not disabled is adopted for light function and *simple routine tasks*." Tr. 18 (emphasis added). This conclusion left out ALJ Madden's limitations concerning Maddess's ability to work with the public and coworkers and to be aware of appropriate precautions for normal hazards. ALJ Volz reasoned that Maddess only received psychiatric treatment at her clinic through nurse practitioners for medication management and an occasional counseling appointment. He stated the evidence showed that "absent alcohol and drug use, the claimant's pain and mental health symptoms are controlled." Tr. 17.

      I agree the record supports the conclusion that Maddess's stomach pain from alcohol-related pancreatitis ended when Maddess was able to achieve a stable period of sobriety. The record does not contain substantial evidence, however, that Maddess's mental limitations also improved. There is no evidence that Maddess leaves her trailer at her parents' home unless her mother is driving her to a medical appointment or a monthly shopping trip. This has been the situation since Maddess moved there in 2005. Chart notes from her mental health clinic indicate Maddess came to her counseling sessions in a depressed and/or anxious state from June 2009 through March 2010, all within an extended period of sobriety. The record supports continuing the significant mental limitations imposed by ALJ Madden, but it does not support removing all limitations except for a limitation to simple routine tasks.

      Even if I could conclude that Maddess's sobriety controlled her mental health symptoms, ALJ Volz limited her to simple, routine tasks but did not include this limitation in the hypothetical he gave to the vocational expert. Furthermore, ALJ Volz did not include this limitation in the formal statement of the residual functional capacity as expressed in finding of

Page 9 - OPINION AND ORDER

fact #5.  Thus, the 2010 decision is not consistent within itself.  Additionally, hypothetical questions posed to a vocational expert must specify all of the limitations and restrictions of the claimant.  Edlund v. Massanari, 253 F.3d 1152, 1160 (9th Cir. 2001).

Finally, Maddess was not represented by counsel or a trained representative in 2006.  This makes the application of res judicata "undesirable."  Gregory, 844 F.2d at 666.  I conclude that res judicata should not be applied here because the two decisions are inconsistent without an adequate explanation supporting ALJ Volz's conclusion that Maddess's mental health had greatly improved.  Moreover, the 2010 decision is inconsistent within itself as to any mental limitations in the residual functional capacity and the hypothetical given to the vocational expert did not match the ALJ's residual functional capacity as stated in one part of his decision.

II.     Remedy

For these reasons, I reverse the decision of the Commissioner and remand for further proceedings without the application of res judicata.  I ask the ALJ to consider the arguments plaintiff's counsel raised concerning Maddess's credibility, the lay testimony of Ms. Bryant, and the opinions of the treating therapist, Jeff Koeppel, a licensed clinical social worker, and treating physician, Dr. Gerald Barker, M.D.  It appears that Maddess's most significant limitations arise from her mental impairments.  The 2005 psychological examination by Dr. Prescott is quite dated and took place at about the time Maddess moved back to her parents' home.  Maddess's reclusiveness appears to have worsened since then.  Thus, I ask the ALJ to obtain another psychological examination.  I also strongly urge the ALJ to continue to step five of the analysis if Maddess is not found to meet or medically equal a listed impairment in step three.

## CONCLUSION

The decision of the Commissioner is reversed. This action is remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for rehearing to further develop the record as explained above. Judgment will be entered.

IT IS SO ORDERED.

Dated this ____8th____ day of August, 2012.

                                                 /s/ Garr M. King
                                              Garr M. King
                                              United States District Judge